# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 1305 | **DATE** | SEP 27 2000 |
| **CASE TITLE** | Martina Mathisen v. Sundance Homes, Inc. and Great West Life & Annuity Insurance Company and related Counterclaims and Third-Party Actions | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, plaintiffs' motion for summary judgment for declaratory judgment and other relief under ERISA, 29 U.S.C. §1001 et seq., as amended by COBRA, 29 U.S.C. §1161 et seq., and promissory estoppel under 28 U.S.C. §1367 against defendant Great West are denied. Summary judgment is granted to the defendant Great West on all three counts of the M.Mathisen's Complaint.
Document numbers 63-1; 67-1 and 73-1 are all terminated.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | 6 number of notices | Document Number |
|---|---|---|---|
| | No notices required. | | |
| | Notices mailed by judge's staff. | SEP 28 2000 date docketed | |
| | Notified counsel by telephone. | | |
| X | Docketing to mail notices. | docketing deputy initials | 100 |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 00 SEP 27 PM 7: 37 | SEP 28 2000 date mailed notice |
| dc(lc) | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **Martina Mathisen** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | No. 97 C 1305 |
| v. ) | |
| ) | HONORABLE DAVID H. COAR |
| **Sundance Homes, Inc.,** and Illinois ) | |
| corporation, and **Great West Life & Annuity** ) | |
| **Insurance Company,** a foreign corporation, ) | |
| ) | |
| **Defendants.** ) | |

## Memorandum Opinion and Order

Before this court plaintiff Martina Mathisen ("M.Mathisen" or "plaintiff"), individually and as next of friend of third-party Defendants Kent, Janeen, Eric and Bjorn Mathisen (collectively referred to herein as the "Mathisen Children")(all collectively referred to herein as the "Mathisens" or "plaintiffs") brings a motion for summary judgment against defendant Great West Life & Annuity Insurance Company ("Great West" or "defendant") for declaratory judgment and improper denial of health benefits under Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1001 et. seq., as amended by the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. §1132(e)(1). For the following reasons, the plaintiff's motion for summary judgment against Great West is DENIED and defendant Great West's motion for summary judgment with respect to M.Mathisen Complaint is GRANTED.

1



## Statement of Facts[1]

M.Mathisen was employed by Sundance as a sales associate from November 16, 1992 through July 15, 1994. Sundance Homes, Inc., ("Sundance") is an Illinois corporation with its principal place of business located in Chicago, Illinois and is a citizen of the State of Illinois. Sundance provided M.Mathisen with health insurance coverage

Upon M.Mathisen's termination on July 15, 1994, Sundance provided M.Mathisen with a "Group Health Benefits Right of Continuation Notice" advising her of her right to continued group health benefits. On July 17, 1994, M.Mathisen signed and returned the "Group Health Benefits Right of Continuation Notice" requesting a continuation of her group health care coverage through Sundance. M.Mathisen's COBRA health insurance coverage through Sundance became effective on August 1, 1994.

At the time of M.Mathisen's termination, July 15, 1994, Aetna Life & Casualty was the health insurance provider for Sundance and remained so until September 30, 1994. As of October 1, 1994, Sundance Homes sponsored an employee welfare benefit plan known as the Health and Welfare Plan for Employees of Sundance Homes, Inc. ("Sundance Plan" or the "Plan"), a group health plan within the meaning of ERISA, 29 U.S.C. §1161(a) and 1167(1) and (2). Effective October 1, 1994, Great West, a corporation organized and existing under the laws of the State of Colorado, with its principal place of business located in Englewood, Colorado, issued its Group Policy No. 256339GH ("Policy") to Sundance. The Policy provided benefits to eligible employees of Sundance and their dependants pursuant to its terms, provisions,

---

[1] All facts are from the Joint Stipulation of Facts, unless otherwise provided.

limitations and exclusions pursuant to the Sundance Plan.

In conjunction with the issuance of the Policy and the Sundance Plan, Sundance assigned to Great West the discretion to determine the benefits that Sundance employees, dependants, and COBRA beneficiaries would be entitled to under the Plan. Pursuant to the terms of the Policy, Great West also issued a Summary Plan Description, dated October 1, 1994 ("SPD") for distribution to the employees of Sundance, setting forth the essential features of coverage under the Policy and the Sundance Plan. On October 1, 1994, Great West provided Sundance with the Benlink System software, which allows Sundance to enter and/or change information concerning the benefit status of its employees and/or their dependents via computer link to Great West's Group Benefit Administration System. Great West and the Sundance Plan entered into a Benlink Administration and Software License Agreement (the "Benlink Agreement"), which sets forth the terms and conditions governing Sundance's use of the Benlink System.

On October 14, 1994, M. Mathisen signed a Great West document entitled "Employee Health Plan Application of Great West". From July 19, 1994 to October 1, 1995, M.Mathisen made payments to Sundance in accordance with the premium amounts quoted to her by Sundance for her and her minor children's health insurance benefits from the Sundance Plan.

M.Mathisen became pregnant in January 1995. On March 8, 1995 M.Mathisen had a telephone conversation with a Great West representative and, during said conversation, received a medical pre-certification number GWLICB5GI-2, in relation to her pregnancy. Also during that telephone conversation, the Great West representative informed M.Mathisen that she should call within 31 days after the birth to add her baby to the Sundance Plan. In May of 1995, Mathisen was hospitalized in connection with her pregnancy. M.Mathisen gave birth to

quadruplets: Kent, Janeen, Bjorn, and Eric on June 21, 1995. The quadruplets remained hospitalized for various periods of time after their births.

On June 28, 1995, M. Mathisen had a telephone conversation with a Great West representative during which she received pre-certification numbers for her children: Kent, GWL-IDB5A7-1; Janeen, GWLIDB4201; Bjorn, GWL-IDB5B3-1; and Eric, GWLIDB5A1-1. On June 29, 1995, Kent Mathisen died. Great West sent letters to Mathisen and/or her health care providers, regarding the pre-admission certification review of Mathisen and her children's hospitalization. Beginning in July 1995, Mathisen paid an increased premium, as quoted to her by Sundance for health benefits for herself as well as for her new-born children under the Sundance Plan.

Claims for benefits under the Sundance Plan arising out of medical services provided to M.Mathisen and the Mathisen Children were presented to Great West. Great West's's records reflect that, prior to October 4, 1995, Great West paid benefits in the following amounts: Martina Mathisen: $51,219.48; Kent Mathisen: $105,044.91; Janeen Mathisen: $64,697.71; Bjorn Mathisen: $67,933.79; and Eric Mathisen: $74,447.78.

K.Mathisen, husband of M.Mathisen and father of the Mathisen Children, is a painter and received health care benefits under the Painters District Council No. 30 Health & Welfare Plan ("Painters Plan"), an employee benefit plan within the meaning of ERISA 29 U.S.C. §1161(a) and 1167(1) and (2) with its principal place of business located in St. Charles, Illinois.

Painters Plan is a joint labor-management trust fund, established for the purpose of providing health benefits to those who work in the painting industry. Health coverage is provided to individuals and their dependents under various collective bargaining agreements

("CBA" or "CBAs") between the Painters District Council Local No. 30 ("Union") and Northeast Illinois Chapter of the Painting and Decorating Contractors of America ("Association").

Pursuant to the provisions of the CBA, employers contribute an hourly amount to the Painters Plan for each hour or portion thereof worked by a painter employee covered by the CBA. The hourly contribution required by the CBA is the same for a painter employee that has single coverage or painter employee that has family coverage. Pursuant to the provisions of the Painters Plan, a painter employee must meet certain work requirements to become initially eligible. Specifically, a painter employee must work at least 250 hours for an employer who contributes to the Painters Plan on behalf on that employee ("credited hours"), during a specific three month eligibility quarter to gain initial eligibility. Once the painter employee earns initial eligibility he remains covered for the balance of that benefit quarter. Coverage continues if the painter employee qualifies under the Painters Plan's continuing eligibility rules. If a painter employee does not meet the continuing eligibility rules in a given eligibility quarter, the painter employee is entitled to COBRA Continuation Coverage for a period of at least 18 months from the date they would otherwise lose coverage or until they qualify through credited work hours in a subsequent eligibility quarter, whichever occurs first. Under the Painters Plan, a dependant includes the spouse of a painter employee and a dependant child of the painter employee. Pursuant to the provisions of the Painters Plan, each individual who becomes a dependant of a painter employee while such employee is eligible for benefits under the Plan is also eligible for dependant benefits on and after the date on which they become a dependant.

K.Mathisen had been working under the CBA between the Union and the Association

since at least 1987 and continuing through the present. K.Mathisen earned initial eligibility under the Painters Plan in June of 1987. Between 1987 and the present, K.Mathisen has maintained uninterrupted coverage through the Painters Plan, either through credited work hours or COBRA continuation coverage. On March 4, 1995, the Painters Plan notified K.Mathisen that he did not have the requisite number of credited work hours in order to maintain his eligibility for the eligibility quarter of March 1, 1995 to May 31, 1995. On March 7, 1995, the Painters Plan sent to K.Mathisen COBRA Notification letter informing him about the right of the Mathisens to COBRA Continuation Coverage under the Painters Plan.

On April 12, 1995, the Painters Plan received a COBRA form signed by K.Mathisen in which he had he had elected individual coverage. The Painters Plan paid benefit claims for Martina Mathisen, for medical services rendered on March 2, 1995 to Evanston Hospital and for two separate medical services rendered on May 17, 1995 to Dr. John S. Sholl. The claims were paid on May 18, 1995 and August 14 and August 22, 1995 respectively. The Sundance Plan, through Great West's, also paid benefit claims for M.Mathisen for the medical services noted above. The Sundance Plan paid these claims on May 4, 1995, June 21, 1995 and July 20, 1995, respectively. On June 1, 1995, K.Mathisen regained his eligibility with the Painters Plan through credited work hours ending his COBRA continuation coverage. In August of 1995, K.Mathisen completed and submitted Painters Plan enrollment cards for Eric, Bjorn and Janeen.

M.Mathisen received a letter on October 9, 1995, from Sundance informing her that her COBRA rates commencing on October 1, 1995 were increasing. Simultaneously, Sundance notified M.Mathisen that Great West had notified Sundance that since the dependant children, Janeen, Eric, Kent and Bjorn, were eligible for coverage K.Mathisen's group insurance plan as of

the date of their birth, they were not eligible for Cobra coverage under the Sundance Plan. By a letter dated October 4, 1995 Sundance attempted to refund to the Mathisens the dependant care COBRA premiums M.Mathisen had paid since July, 1995. (M.Mathisen Complaint For Declaratory Judgment And Other Relief (hereinafter the "M.Mathisen Complaint), ¶ 21). Great West refused to pay any benefits for the dependent children after October 4, 1995. (M.Mathisen Comp., ¶ 22) In January 1996, Great West attempted to seek reimbursement from Mathisen and various health care providers who performed services for, and on behalf of, her and her dependent children for the benefits paid on behalf of the dependent children. (M.Mathisen Comp., ¶ 23).

On February 25, 1997, M.Mathisen filed a complaint against Sundance and Great West. Under the first count, the plaintiff seeks declaratory relief that under ERISA, and particularly COBRA, the defendant is liable for providing continuing dependent coverage to the Mathisens by reason of Mathisen's election of such continuation coverage at least through January 16, 1996 and that Mathisen recover her reasonable attorneys fees and costs. Under the Second Count, Mathisen requested that she and her dependent children recover health insurance benefits that they are entitled to and owed under the terms of the Sundance group. Finally, M.Mathisen requests that Great West be estopped from denying the existence of continuation coverage under the Sundance group health insurance plan for M.Mathisen and the Mathisen Children and that the Mathisens be awarded all medical expenses recoverable under the Sundance group health insurance plan for M.Mathisen and her dependent children. On February 22, 2000 both parties filed motions for summary judgment in their favor on all three counts.

## Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter if law." Fed.R.Civ.P. 56(c); Cox v. Acme Health Serv., Inc., 55 F.3d 1304, 1308 (7th Cir. 1995). A genuine issue of material fact exists for trial when, after viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Hedberg v. Indiana Bell Tel. Co, 47 F.3d 928, 931 (7th Cir. 1995). The party moving for summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hedberg, 47 F.3d at 931. If this burden is met by the movant, the non-movant must then set forth specific facts to show that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); Celotex, 477 U.S. at 324. In deciding a motion for summary judgment, the court must read the facts in a light most favorable to the non-movant. Cuddington v. Northern Ind. Public Serv. Co., 33 F.3d 813, 815 (7th Cir. 1994). However, Rule 56(c) mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. A scintilla of evidence in support of the non-movant's position is not sufficient to oppose successfully a summary judgment motion: "there must be evidence on which they jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 250.

On cross-motions for summary judgment, each movant must satisfy the requirements for

summary judgment. See Anderson v. J.A. Interior Applications, Inc., No. 97 C. 4552, 1998 WL 708851, at *4 (N.D. Ill. Sep. 28, 1998) (citing Proviso Assoc. of Retarded Citizens v. Village if Westchester, 914 F. Supp. 1555, 1560 (N.D. Ill. 1996)). The merits of each cross-motion will be considered separately and all reasonable inferences and factual questions will be resolved against the party whose motion is under consideration. See id.

## Analysis

The Mathisens bring this action under ERISA,, 29 U.S.C. §1001 et. seq., as amended by, 29 U.S.C. §1132(e)(1) to determine liability for medical benefits provided to them under the Sundance Plan as administered by Great West.

### Counts I and II

A participant in an employee welfare benefit plan covered by ERISA may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. S 1132(a)(1)(B). In Illinois, actions to recover ERISA plan benefits may only be brought against the Plan itself. Jass v. Prudential Health Care Plan, Inc., 88 F.3d 1482, 1490 (7th Cir. 1996) (rejecting a denial of benefits claim brought against individual defendant and ruling "the appropriate defendant for denial of benefits claim would be the plan ..."); Riordan v. Commonwealth Edison Co., 128 F.3d 549, 551 (7th Cir.1997) ("It is true that ERISA permits suits to recover benefits only against the plan as an entity..."); Kreimeier v. Interstate Power Co., 2000 WL 1225463, *1 (7th Cir.).

9

Jass and Riordan consistently have been upheld in been upheld in the lower courts of the Seventh Circuit. See e.g., Anderson v. Illinois Bell Telephone Co., 961 F. Supp. 1208 (N.D. Ill. 1997) (dismissing Section 1132(a)(1)(B) claim against employer holding that plaintiff/beneficiary is required to sue the plan); Fortmann v. Avon Products, Inc., 1999 WL 160258, *4 (N.D. Ill.1999) (finding that since the employer and the plan are not the same entity, plaintiff/beneficiary only may bring suit against the plan under Section 1132(a)(1)(B) claim); Frank v. Ameritech Corp., 1999 WL 1011107, *3 (N.D. Ill. Oct. 12, 1999); Witowski v. Tetra Tech, Inc., 38 F.Supp.2d 640, 644 (N.D.Ill. 1998); Wyluda v. Fleet Financial Group, 2000 WL 1264617, *2 (E.D.Wis.).

In this case, Great West was the claims administrator of a benefits plan that was sponsored by Sundance Homes through the Health and Welfare Plan for Employees of Sundance Homes. While Great West provided a Policy to the Sundance employees, that Policy was pursuant to the Sundance Plan. Great West was neither the sponsor nor the plan administrator. Despite Great West's obvious influence in the decision to terminate the health benefits provided to Mathisens under their Policy, the law of the Circuit dictates that only a plan may sue the claims administrator. Therefore, actions to recover ERISA plan benefits by beneficiaries may only be brought against the Plan itself. While the plaintiffs have provided evidence that Great West was continuously in contact with M.Mathisen and even may have made decisions regarding the coverage of the Mathisens, the plaintiffs have not brought any evidence forward that suggests that Great West was the Sundance Plan's sponsor or the Plan's administrator. Consequently, M.Mathisen can not properly bring her claim against Great West.

10

Count III - Promissory Estoppel

Under Count III of her claim, the plaintiff brings a claim of promissory estoppel against Great West pursuant to supplemental jurisdiction available to this court under 28 U.S.C. '1367. Plaintiff's claim for promissory estoppel is preempted by ERISA. Weatherly v. Illinois Bell Telephone, 856 F.Supp. 1301, 1305 (N.D.Ill. 1994); Shields v. Health, Welfare & Pension Fund, Local 705, Int'l Broth. of Teamsters, 1998 WL 341800 *6 (N.D.Ill. 1998).

In order to prevail on a federal common law ERISA promissory estoppel claim in the Seventh Circuit, the following must be established: "(1) a knowing misrepresentation; (2) made in writing; (3) with reasonable reliance on that misrepresentation by the plaintiff; (4) to her detriment." Coker v. Trans World Airlines, Inc, 165 F.3d 579,585 (7th. Cir. 1999). The estoppel doctrine does not negate the general rule prohibiting oral modifications to an ERISA plan. Frahm v. The Equitable Life Assur. Soc. of the United States, 137 F.3d 955, 961 (7th Cir. 1998); Schmidt v. Sheet Metal Workers Nat'l Pension Fund, 128 F.3d 541, 546 (7th Cir. 1997); Vershaw, 979 F.2d at 559; Pohl, 956 F.2d at 128; Weatherly, 856 F.Supp. at 1306. Under this standard, estoppel claims under the federal common law of ERISA are recogznied only in extremely limited circumstances. Coker v. Trans World Airlines, Inc., 165 F.3d 579, 585 (7th Cir. 1999); Pohl v. National Benefits Consultants, Inc., 956 F.2d 126, 128 (7th Cir. 1992); Vershaw v. Northwestern Nat'l Life Ins. Co., 979 F.2d 557, 559 (7th Cir. 1992).

Instrumental in this analysis are facts upon which the Seventh Circuit clarified the standard for estoppel claims under ERISA. In Coker, the plaintiff's husband's former employer, due to bureaucratic error, continued to carry plaintiff as covered under its health insurance plan, despite her lack of continued eligibility. Coker, 165 F.3d at 582. The Seventh Circuit rejected

11

the plaintiff's estoppel arguments for several reasons. First, the court found that the "misrepresentations" presented by plaintiff: the issuance of insurance cards, payment of benefits, and hospital pre-certifications, to the extent they were in writing at all, were nothing more than the result of innocent error. Coker, 165 F.3d at 585 (7th Cir. 1993)(citing Thomason v. Aetna Life Ins. Co., 9 F.3d 645. 649). Most significantly the court emphasized that there was "no hint that [the plan] set out to mislead her or anyone else." Id. Further the court found that pre-certifications were not a guarantee of eligibility for benefits and therefore did not support her claim. Id.

In this case, there is no evidence before this court to support an estoppel claim based on a knowing and deliberate written misrepresentation by Great West. In M.Mathisen's Complaint, she states that "Great West made specific representations to [M.]Mathisen, without qualification, that she and her dependent children were entitled to and would receive continuation coverage under Sundance's group health insurance plan." (M.Mathisen Complaint, ¶ 25). M.Mathisen provides a number of acts committed by Great West during the course of coverage that indicated that she and her children would be covered under COBRA as further evidence of Great West's false representations.

Even these acts, however, are not sufficient to meet the requirements for an ERISA estoppel claim. For example, even if Great West's payment of claims for the quadruplets constituted a written misrepresentation of coverage, there is no evidence that even hints that Great West paid such claims in an effort to deliberately or intentionally mislead the plaintiff. Examining the evidence in the light most favorable to M.Mathisen, even if these allegations were all undeniably true, these facts would not satisfy the "knowing and deliberate misrepresentation"

element required to bring a promissory estoppel claim under ERISA. Since the plaintiff's claim can not meet an essential element of what is required to proceed on a claim of promissory estoppel under ERISA, plaintiffs' motion for summary judgment is denied and Great West is entitled to summary judgment in its favor on Count III of M.Mathisen's Complaint.

## Conclusion

For the foregoing reasons, plaintiffs' motion for summary judgment for declaratory judgment and other relief under ERISA, 29 U.S.C. §1001 et seq., as amended by COBRA, 29 U.S.C. §1161 et seq., and promissory estoppel under 28 U.S.C. §1367 are denied. Summary judgment is granted to the defendant Great West on all three counts of the M.Mathisen's Complaint.

Enter:

*David H. Coar* (signature)

David H. Coar

**United States District Judge**

**Dated:** SEP 27 2000

13