# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 1305 | **DATE** | September 27, 2000 |
| **CASE TITLE** | Martina Mathisen v. Sundance Homes, Inc. and Great West Life & Annuity Insurance Company and related Counterclaims and Third-Party Actions | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, the plaintiffs' motion for summary judgment and the third-party defendant Painters Plan's motion for summary judgment against Sundance and Great West is denied because a genuine issue exists as to the amount for which Painters Plan is obligated. An evidentiary hearing as to the liability issues will be set by a separate court order. Document numbers 63-1; 67-1 and 73-1 are are all terminated.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

No notices required, advised in open court.

No notices required.

Notices mailed by judge's staff.

Notified counsel by telephone.

X   Docketing to mail notices.

Mail AO 450 form.

Copy to judge/magistrate judge.

dc(lc)   courtroom deputy's initials

number of notices

SEP 28 2000
date docketed

docketing deputy initials

ED-7
FILED FOR DOCKETING
00 SEP 27 PM 7: 36

SEP 28 2000
date mailed notice

Document Number

101

Date/time received in central Clerk's Office

mailing deputy initials

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **Martina Mathisen** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 97 C 1305** |
| v. | ) | |
| | ) | **HONORABLE DAVID H. COAR** |
| **Sundance Homes, Inc.,** and Illinois | ) | |
| corporation, and **Great West Life & Annuity** | ) | |
| **Insurance Company,** a foreign corporation, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| ----------------------------------------------------- | ) | |
| **And related Counterclaims and** | ) | |
| **Third-Party Actions** | ) | |

SEP 28 2000

### Memorandum Opinion and Order

Before this court plaintiff Martina Mathisen ("M.Mathisen" or "plaintiff"), individually

and as next of friend of third-party Defendants Kent, Janeen, Eric and Bjorn Mathisen

("Mathisen Children")(all collectively referred to herein as the "Mathisens" or "plaintiffs")

brings a motion for summary judgment against defendants Great West Life & Annuity Insurance

Company ("Great West") and Sudance Homes, Inc. ("Sundance Homes")(collectively

"Sundance Parties") for declaratory judgment and improper denial of health benefits under

Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1001 et. seq. , as amended by

the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. §1132(e)(1).

Sundance and intervenors Joseph Atkin ("Atkin") administrator of the Health and Welfare Plan

1

the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. §1132(e)(1). Sundance and intervenors Joseph Atkin ("Atkin") administrator of the Health and Welfare Plan for Employees of Sundance Homes, Inc., and Health and Welfare Plan for Employees of Sundance ("Sundance Plan" or the "Plan")(collectively "Sundance"), Great West, and third-party defendant Painters District Council No. 30 Health & Welfare Fund ("Painters Plan") have filed cross motions for summary judgment seeking declaratory relief on the issue of coverage and liability for the Mathisens' health benefits coverage from June 1, 1995 onward.[2] For the following reasons, the plaintiffs' and third-party defendant Painters Plan's motions for summary judgment against Sundance and Great West are DENIED.

### Statement of Facts[3]

M.Mathisen was employed by Sundance as a sales associate from November 16, 1992 through July 15, 1994. Sundance Homes, Inc., ("Sundance") is an Illinois corporation with its principal place of business located in Chicago, Illinois and is a citizen of the State of Illinois. Sundance provided M.Mathisen with health insurance coverage

Upon M.Mathisen's termination on July 15, 1994, Sundance provided M.Mathisen with a "Group Health Benefits Right of Continuation Notice" advising her of her right to continued group health benefits. On July 17, 1994, M.Mathisen signed and returned the "Group Health Benefits Right of Continuation Notice" requesting a continuation of her group health care coverage through Sundance. M.Mathisen's COBRA health insurance coverage through Sundance

---

[2] Either through complaints or motions for summary judgment, Sundance and Great West are seeking, in addition, restitution and reasonable attorneys fees.

[3] All facts are from the Joint Stipulation of Facts, unless otherwise provided.

2

became effective on August 1, 1994.

At the time of her termination, July 15, 1994, Aetna Life & Casualty was the health insurance provider for Sundance and remained so until September 30, 1994. As of October 1, 1994, Sundance Homes sponsored an employee welfare benefit plan known as the Health and Welfare Plan for Employees of Sundance Homes, Inc. ("Sundance Plan" or the "Plan"), a group health plan within the meaning of ERISA, 29 U.S.C. §1161(a) and 1167(1) and (2). Effective October 1, 1994, Great West, a corporation organized and existing under the laws of the State of Colorado, with its principal place of business located in Englewood, Colorado, issued its Group Policy No. 256339GH ("Policy") to Sundance. The Policy provided benefits to eligible employees of Sundance and their dependants pursuant to its terms, provisions, limitations and exclusions pursuant to the Sundance Plan.

In conjunction with the issuance of the Policy and the Sundance Plan, Sundance assigned to Great West the discretion to determine the benefits that Sundance employees, dependants, and COBRA beneficiaries would be entitled to under the Plan. Pursuant to the terms of the Policy, Great West also issued a Summary Plan Description, dated October 1, 1994 ("SPD") for distribution to the employees of Sundance, setting forth the essential features of coverage under the Policy and the Sundance Plan. On October 1, 1994, Great West provided Sundance with the Benlink System software, which allows Sundance to enter and/or change information concerning the benefit status of its employees and/or their dependents via computer link to Great West's Group Benefit Administration System. Great West and the Sundance Plan entered into a Benlink Administration and Software License Agreement (the "Benlink Agreement"), which sets forth the terms and conditions governing Sundance's use of the Benlink System.

3

On October 14, 1994, M. Mathisen signed a Great West document entitled "Employee Health Plan Application of Great West". From July 19, 1994 to October 1, 1995, M.Mathisen made payments to Sundance in accordance with the premium amounts quoted to her by Sundance for her and her minor children's health insurance benefits from the Sundance Plan.

M.Mathisen became pregnant in January 1995. On March 8, 1995 M.Mathisen had a telephone conversation with a Great West representative and, during said conversation, received a medical pre-certification number GWLICB5GI-2, in relation to her pregnancy. Also during that telephone conversation, the Great West representative informed M.Mathisen that she should call within 31 days after the birth to add her baby to the Sundance Plan. In May of 1995, Mathisen was hospitalized in connection with her pregnancy. M.Mathisen gave birth to quadruplets: Kent, Janeen, Bjorn, and Eric on June 21, 1995. The quadruplets remained hospitalized for various periods of time after their births.

On June 28, 1995, M. Mathisen had a telephone conversation with a Great West representative during which she received pre-certification numbers for her children: Kent, GWL-IDB5A7-1; Janeen, GWLIDB4201; Bjorn, GWL-IDB5B3-1; and Eric, GWLIDB5A1-1. On June 29, 1995, Kent Mathisen died. Great West sent letters to Mathisen and/or her health care providers, regarding the pre-admission certification review of Mathisen and her children's hospitalization. Beginning in July 1995, Mathisen paid an increased premium, as quoted to her by Sundance for health benefits for herself as well as for her new-born children under the Sundance Plan.

Claims for benefits under the Sundance Plan arising out of medical services provided to M.Mathisen and the Mathisen Children were presented to Great West. Great West's records

4

reflect that, prior to October 4, 1995, Great West paid benefits in the following amounts: Martina Mathisen: $51,219.48; Kent Mathisen: $105,044.91; Janeen Mathisen: $64,697.71; Bjorn Mathisen: $67,933.79; and Eric Mathisen: $74,447.78.

K.Mathisen, husband of M.Mathisen and father of the Mathisen Children, is a painter and received health care benefits under the Painters District Council No. 30 Health & Welfare Plan ("Painters Plan"), an employee benefit plan within the meaning of ERISA 29 U.S.C. §1161(a) and 1167(1) and (2) with its principal place of business located in St. Charles, Illinois.

Painters Plan is a joint labor-management trust fund, established for the purpose of providing health benefits to those who work in the painting industry. Health coverage is provided to individuals and their dependents under various collective bargaining agreements ("CBA" or "CBAs") between the Painters District Council Local No. 30 ("Union") and Northeast Illinois Chapter of the Painting and Decorating Contractors of America ("Association").

Pursuant to the provisions of the CBA, employers contribute an hourly amount to the Painters Plan for each hour or portion thereof worked by a painter employee covered by the CBA. The hourly contribution required by the CBA is the same for a painter employee that has single coverage or painter employee that has family coverage. Pursuant to the provisions of the Painters Plan, a painter employee must meet certain work requirements to become initially eligible. Specifically, a painter employee must work at least 250 hours for an employer who contributes to the Painters Plan on behalf on that employee ("credited hours"), during a specific three month eligibility quarter to gain initial eligibility. Once the painter employee earns initial eligibility he remains covered for the balance of that benefit quarter. Coverage continues if the

5

painter employee qualifies under the Painters Plan's continuing eligibility rules. If a painter employee does not meet the continuing eligibility rules in a given eligibility quarter, the painter employee is entitled to COBRA Continuation Coverage for a period of at least 18 months from the date they would otherwise lose coverage or until they qualify through credited work hours in a subsequent eligibility quarter, whichever occurs first. Under the Painters Plan, a dependant includes the spouse of a painter employee and a dependant child of the painter employee. Pursuant to the provisions of the Painters Plan, each individual who becomes a dependant of a painter employee while such employee is eligible for benefits under the Plan is also eligible for dependant benefits on and after the date on which they become a dependant.

K.Mathisen had been working under the CBA between the Union and the Association since at least 1987 and continuing through the present. K.Mathisen earned initial eligibility under the Painters Plan in June of 1987. Between 1987 and the present, K.Mathisen has maintained uninterrupted coverage through the Painters Plan, either through credited work hours or COBRA continuation coverage. On March 4, 1995, the Painters Plan notified K.Mathisen that he did not have the requisite number of credited work hours in order to maintain his eligibility for the eligibility quarter of March 1, 1995 to May 31, 1995. On March 7, 1995, the Painters Plan sent to K.Mathisen COBRA Notification letter informing him about the right of the Mathisens to COBRA Continuation Coverage under the Painters Plan.

On April 12, 1995, the Painters Plan received a COBRA form signed by K.Mathisen in which he had he had elected individual coverage. While K.Mathisen elected single COBRA coverage from the Painters Plan, M.Mathisen never responded to the Painters Plan letter. (Statement of Facts, par. 23-24; Tab "4" - Donna DePhillips Deposition, p. 115, lines 15-22).

The Painters Plan paid benefit claims for Martina Mathisen, for medical services rendered on March 2, 1995 to Evanston Hospital and for two separate medical services rendered on May 17, 1995 to Dr. John S. Sholl. The claims were paid on May 18, 1995 and August 14 and August 22, 1995 respectively. The Sundance Plan, through Great West's, also paid benefit claims for M.Mathisen for the medical services noted above. The Sundance Plan paid these claims on May 4, 1995, June 21, 1995 and July 20, 1995, respectively. On June 1, 1995, K.Mathisen regained his eligibility with the Painters Plan through credited work hours ending his COBRA continuation coverage. In August of 1995, K.Mathisen completed and submitted Painters Plan enrollment cards for Eric, Bjorn and Janeen.

M.Mathisen received a letter on October 9, 1995, from Sundance informing her that her COBRA rates commencing on October 1, 1995 were increasing. Simultaneously, Sundance notified M.Mathisen that Great West had notified Sundance that since the dependant children, Janeen, Eric, Kent and Bjorn, were eligible for coverage K.Mathisen's group insurance plan as of the date of their birth, they were not eligible for Cobra coverage under the Sundance Plan. By a letter dated October 4, 1995 Sundance attempted to refund to the Mathisens the dependant care COBRA premiums M.Mathisen had paid since July, 1995. (M.Mathisen Complaint For Declaratory Judgment And Other Relief (hereinafter the "M.Mathisen Complaint), ¶ 21). Great West refused to pay any benefits for the dependent children after October 4, 1995. (M.Mathisen Comp., ¶ 22) In January 1996, Great West attempted to seek reimbursement from Mathisen and various health care providers who performed services for, and on behalf of, her and her dependent children for the benefits paid on behalf of the dependent children. (M.Mathisen Comp., ¶ 23).

On February 25, 1997, M.Mathisen filed a complaint against Sundance and Great West. Under the first count, the plaintiff seeks declaratory relief that under ERISA, and particularly COBRA, the defendant is liable for providing continuing dependent coverage to the Mathisens by reason of Mathisen's election of such continuation coverage at least through January 16, 1996 and that Mathisen recover her reasonable attorneys fees and costs. Under the Second Count, Mathisen requested that she and her dependent children recover health insurance benefits that they are entitled to and owed under the terms of the Sundance group. Finally, M.Mathisen requests that Great West be estopped from denying the existence of continuation coverage under the Sundance group health insurance plan for M.Mathisen and the Mathisen Children and that the Mathisens be awarded all medical expenses recoverable under the Sundance group health insurance plan for M.Mathisen and her dependent children. On February 22, 2000, Sundance , Great West, and third-party defendant Painters Plan filed cross motions for summary judgment seeking declaratory relief on the issue of coverage and liability for the Mathisens' health benefits coverage from June 1, 1995 onward both parties filed motions for summary judgment in their favor on all three counts.

## Standards of Review

### A. Summary Judgment Standard

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the

particular issue. See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S.Ct. 2505, 91

L.Ed.2d 202 (1986); <u>Eiland v. Trinity Hosp.</u>, 150 F.3d 747, 750 (7th Cir.1998). With a motion

for summary judgment, the burden rests on the moving party to demonstrate "that there is an

absence of evidence to support the nonmoving party's case." <u>Celotex Corp. v. Catrett</u>, 477 U.S.

317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After the moving party demonstrates the

absence of a genuine issue for trial, the responsibility shifts to the non-movant to "go beyond the

pleadings" to cite evidence of a genuine factual dispute precluding summary judgment. <u>Id.</u> at

322-23. "If the non-movant does not come forward with evidence that would reasonably permit

the finder of fact to find in [his] favor on a material question, then the court must enter summary

judgment against [him]." <u>Waldridge v. American Hoechst Corp.</u>, 24 F.3d 918, 920 (7th Cir.1994)

(citing <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 585-87, 106 S.Ct. 1348,

89 L.Ed.2d 538 (1986)); <u>Celotex</u>, 477 U.S. at 322-24; <u>Anderson</u>, 477 U.S. at 249-52).

 In considering a motion for summary judgment, a court must draw all reasonable

inferences in a light most favorable to the non-movant. <u>Spraying Sys. Co. v. Delavan, Inc.</u>, 975

F.2d 387, 392 (7th Cir.1992). Thus, if genuine doubts remain, and a reasonable fact-finder could

find for the party opposing the motion, summary judgment is inappropriate. <u>Shields Enters., Inc.</u>

<u>v. First Chicago Corp.</u>, 975 F.2d 1290, 1294 (7th Cir.1992); <u>Wolf v. City of Fitchburg</u>, 870 F.2d

1327, 1330 (7th Cir.1989). However, if it is clear that a plaintiff will be unable to satisfy the legal

requirements necessary to establish his case, summary judgment is not only appropriate, but also

required. <u>Celotex</u>, 477 U.S. at 322; <u>Herman v. City of Chicago</u>, 870 F.2d 400, 404 (7th Cir.1989).

 On cross-motions for summary judgment, each movant must satisfy the requirements for

summary judgment. <u>See</u> Anderson v. J.A. Interior Applications, Inc., No. 97 C. 4552, 1998 WL

9

708851, at *4 (N.D. Ill. Sep. 28, 1998) (citing Proviso Assoc. of Retarded Citizens v. Village of Westchester, 914 F. Supp. 1555, 1560 (N.D. Ill. 1996)).  The merits of each cross-motion will be considered separately and all reasonable inferences and factual questions will be resolved against the party whose motion is under consideration.  Id.

### B. Standard of Review of Plan Administrator's Denial of Benefits

Title 29 U.S.C. S 1132(a)(1)(B) permits a participant or beneficiary of an ERISA plan "to recover benefits due" under the terms of plan. In Illinois, courts reviewing decisions of administrators of ERISA plans to deny benefits sought by participants or beneficiaries do so under a de novo standard unless the plan unambiguously confers discretion on the administrator to determine benefit eligibility, in which case courts review the decision under the more deferential arbitrary and capricious standard.  Herzberger v. Standard Ins. Co., 205 F.3d 327, 331 (7th Cir.2000); M.Day v. M.Wall, 2000 WL 1290997, *3-*4 (E.D.Wis.). The reason for this rule is that because important employee interests are at stake the employer must make clear whether a plan confers a solid right to benefits or merely the right to appeal to the discretion of the plan's administrator. Id.

The Sundance Parties argue that the decisions made by Sundance and Great West regarding the Mathisens' coverage should be subject to the more forgiving arbitrary and capricious standard.  (Great West Memorandum of Law In Support of Its Motion for Summary Judgment, pgs. 9-12).  Upon examination, however, the Sundance Plan does not unambiguously confer discretion on the Plan administrator to deny benefits to participants or beneficiaries. Nor do the defedendants indicate the language in the Plan or elsewhere that would provide such

10

information to beneficiaries. A participant or beneficiary reading the provision would not reasonably understand the Plan to be a statement that his or her eligibility for benefits depended on the discretion of the administrator rather than on the language of the Plan. Therefore, the Sundance Parties' decision to deny benefits to plaintiff will be reviewed de novo.

## Analysis

The parties bring the motions for summary judgment and partial summary judgment on the issue of liability for the health benefits provided to M.Mathisen and the Mathisen Children and declaratory judgment regarding liability for future health benefits to M.Mathisen and the Mathisen Children.

### A. M.Mathisen's Rights Under the COBRA

The law is clear that COBRA beneficiaries are entitled to the identical healthcare terms and benefits provided to similarly situated non-COBRA beneficiaries. Geissal v. Moore, 118 S.Ct. 1869 (1998); Popovits v. Circuit City Stores, Inc., 185 F.3d 731 (7th Cir. 1999); Lutheran Hosp. of Ind. v. Business Men's Assur., 51 F.3d 1308 (7th Cir. 1995). Consequently, in order to comply with the Code, the Sundance Plan's provision allowing a participant to add his/her newly acquired dependent within 31 days must apply equally to a participant who is on COBRA continuation coverage as any other similarly situated non-COBRA participant.

The Sundance Parties go to great lengths to try and circumvent this clear mandate from the Supreme Court. The defendants argue that "identical coverage" really only means an "identical

level of benefits for qualified beneficiaries only."[4] (Sundance Response to Plaintiff's Motion for Partial Summary Judgment ("Sundance Response to Pl.'s MSJ), pg. 8). According to the defendants, M.Mathisen, as a qualified beneficiary under COBRA and not a current employee, did not have the right to add dependents under her coverage.. As support for their argument, the Sudance claims that "[n]owhere in the statute is there any provision requiring that the Plan permit the beneficiary to change her coverage once elected" (Sundance Memorandum of Law in Support of Motion for Partial Summary Judgment ("Sundance Mem. of Law"), at p.10, ¶2). The defendants' assertions are puzzling given the fact that Great West in its 1995 COBRA CONTINUATION ADMINISTRATION PROCEDURES MANUAL, at pages 11 and 12 states:

> The proposed regulations allow COBRA beneficiaries with single or family coverage to add newly acquired Dependents (such as newborn, or an adopted child, or spouse) in the same way as the plan would allow an active Employee to add newly acquired Dependents. As outlined in Section IA of this memorandum, COBRA absolutely mandates that if a plan allows a non-COBRA beneficiary to change his/her coverage, it must allow the COBRA beneficiary the same right. 29 U.S.C. ¶1162(1).

---

[4]Prior to its amendment effective January 1, 1997, COBRA defined "qualified beneficiary" to mean, "with respect to a covered employee under a group health plan, any other individual who, on the day before the qualifying event for that employee, is a beneficiary under the plan (i) as a spouse of the covered employee or (ii) as the dependant child of the covered employee." 29 U.S.C. §1167(3)(A).

Section 1163 of COBRA defines "qualifying event" to mean, in part, as follows:
> For the purposes of this part, the term "qualifying event" means, with respect to any covered employee, any of the following events which, but for the continuation coverage required under this part, would result in a loss of coverage to the qualified beneficiary:
> *      *      *      *      *      *
> (2) The termination (other than by reason of such employee's gross misconduct) or reduction of hours, of the covered employee's employment.

As long as M.Mathisen was a qualified beneficiary under the COBRA statute, she was entitled to add her newly acquired dependents within 31 days of the date of acquisition under the same terms and conditions as possible, provided to employees of Sundance, Inc.

## B. The Derivative COBRA Rights of the Mathisen Children

Under the proposed regulations promulgated by the Treasury Department for COBRA, if newborn children, adopted children, and spouses join the family of a qualified beneficiary after a qualifying event and become covered under the plan by virtue of the qualified beneficiary's election of coverage for family members, such postevent family members do not become qualified beneficiaries themselves. Prop. Treas. Reg. § 1.162-26, Q&A-17(b).[56] On the basis of this language, the court agrees with the Sundance Parties that the Mathisen children were not independently entitled to COBRA continuation under the Sundance Plan. In and of itself, such a statement does not automatically preclude the Mathisen Children from being eligible for coverage under COBRA pursuant to the Sundance Plan. As mentioned above, the Sundance Plan specifically provides for the addition of newly-acquired dependents to their non-COBRA

[5]On June 15, 1987, the Treasury Department, acting pursuant to statutorily-delegated rule-making authority, see 29 U.S.C. § 1204(a), promulgated proposed regulations concerning COBRA continuation coverage, which supplemented the COBRA amendments. See Treas. Reg. § 1.162-26, 52 Fed. Reg. 22, 716 (1987)(to be codified at 26 C.F.R. pt. 1)(proposed Apr. 6, 1987)(the "Treasury regulations"). Even before the regulations were adopted in final form, they were considered indicative of the Treasury's Department's official policies regarding continuation of coverage and were given great judicial deference. See Lutheran Hospital of Indiana v. Saint Joseph Medical, 51 F.3d 1308, 1312 (7th Cir.1995); Branch v. G. Bernd Co., 955 F.2d 1574 (11th Cir.1992); Communications Workers of America v. NYNEX Corp., 898 F.2d 887, 888-89 (2d Cir.1990); Johnson v. Reserve Life Insurance Company, 765 F.Supp. 1478 (C.D.Cal.1991). Following the deference to regulations outline in the above-mentioned cases, this Court will look to see if Sundance Parties made a good faith effort with the proposed regulations.

participants who had individual coverage only, thereby guaranteeing COBRA beneficiaries the same right.

Therefore, at any point that M.Mathisen was a qualified beneficiary under the statute, meaning she had not been subject to a disqualifying event, the Mathisen Children were eligible to receive all healthcare benefits available to the dependents of similarly-situated persons who had not experienced a qualifying event.[7]

## C. The Status of M.Mathisen's COBRA Coverage on June 1, 1995

### 1. Termination of Coverage Under the Painters Plan

The determinative issue before this court, therefore, is the status of M.Mathisen's COBRA coverage pursuant to the Sundance Plan prior to the birth of the Mathisen Children.

The issue of contention among the parties in this case is whether or not M.Mathisen became covered by another group health plan after electing COBRA continuing coverage through the Sundance Plan, thereby automatically terminating M.Mathisen's COBRA coverage with respect to herself as well as her children. With regard to disqualification due to subsequent

---

[7]Under COBRA, IRC §4980B(f)(2)(B), and the Sundance Plan, the following four disqualify events will cut short the maximum coverage period of 18 months:

> 1. The employer ceases to provide any group health plan (including successor plans);
> 2. The qualified beneficiary fails to make a premium payment on time;
> 3. The qualified beneficiary becomes covered under any other group health plan (as an employee or otherwise) that does not contain any exclusion or limitation with respect to any reexisting condition of such beneficiary; or
> 4. The qualified beneficiary becomes entitled to Medicare benefits.

coverage, the United States Supreme Court and the Seventh Circuit have definitively found that COBRA continuation coverage terminates on the date on which the qualified beneficiary first becomes, after the date of the election covered by another group health plan.[8] Consequently, if the qualified beneficiary first becomes covered under another group health plan on or before the date on which COBRA is elected the statute does not operate to terminate a qualified beneficiary's continuing coverage.[9] Geissal, 118 S. Ct. at 1874 (an individual already covered by another group health plan at the time of his election of COBRA continuation coverage could not be denied COBRA continuation coverage on the basis of said other coverage); Lutheran Hospital, 51 F.3d at 1312; Treas. Dept. Regs. 54.4908B-7 and 8.

Therefore, in this case, liability for past and future health benefits to M.Mathisen and her children is determined by whether or not M.Mathisen became covered by another group health plan after the date of her COBRA election on July 17, 1994, effective October 1994. At the time M.Mathisen elected individual continuation coverage with Sundance in July, 1994, M.Mathisen was already covered by another group health plan, the Painters Plan, as the spouse of K.Mathisen. M.Mathisen had been covered by the Painters Plan since 1992. Thus, at the time of her election, the plaintiff chose to continue her dual insurance coverage with both the Painters Plan as well as the Sundance Plan.

---

[8]29 U.S.C. §1162(2)(D)(i)

[9] The defendants argue that such an interpretation "flies in the face of Congressional intent and is a complete misreading of the statute and holdings in both Geissal and Lutheran Hospitals." (Sundance Parties' Response to Pl.'s MSJ, pg. 4). The defendants, however, do not offer any evidence of a contrary Congressional intent or an interpretation of the holdings in Geissal or Lutheran by another court that would be sympathetic to their position.

On March 1, 1995, during the time of M.Mathisen's COBRA continuing coverage,

K.Mathisen lost his eligibility under the Painters Plan. The Painters Plan, by a letter sent on March

4, 1995, notified K.Mathisen that he had worked insufficient hours to retain his eligibility for

coverage. The March 4 letter provided ". . . you are NOT ELIGIBLE for Health and Welfare

Benefits for the quarter beginning March 1, 1995 and ending May 31, 1995." On March 7, 1995

the Painters Plan sent to the Mathisen home a COBRA election form offering both family and

single coverage to the Mathisens. That COBRA election form advised:

> "Enclosed is an Election Form for members of the Mathisen family
> who were covered by the plans listed above immediately before the
> qualifying event. This must be returned to the plan administrator by
> no later than 05/06/95. If the Election Form is not returned by that date is
> discontinued effective 2/28/95."

K.Mathisen elected single COBRA coverage from the Painters Plan. M.Mathisen never

responded to the Painters Plan letter. At her discovery deposition, Donna DePhillips, the Painters

Plan administrator at the time, testified that the plaintiff was no longer covered as a dependant as

of March 1, 1995. [10]

The Painters Plan's Restated Health and Welfare Plan of Benefits ("Painters Benefits

Plan"), Article I, section 1.09 defines the term "Covered Under The Plan" as "An individual is

eligible in accordance with the eligibility provisions of this Painters Benefits Plan to receive the

---

[10]Sundance continuously refers to Donna DePhillips ("DePhillips") as the "Plan
Administrator" of the Painters Plan. For purposes of clarification it must be noted that she was
the Administrative Manager in charge of the day to day operations of the Painters Benefits Plan.
She was not the Plan Administrator as that term is defined under ERISA, 29 U.S.C.
§1002(16)(A). Accordingly, DePhillips could not bind the Board of Trustees on final decisions
regarding eligibility and benefits. This clarification regarding DePhillips' status, does not
affect this court's view of the information provided in her deposition..

Painters Benefits Plan benefits which are applicable to his eligibility status as an Employee,

Dependant of an Employee . . . ." Further, the Painters Benefits Plan provides in Article VIII,

section 8.02 (Termination of Dependant Eligibility for Plan Benefits), that dependant's benefits

"shall terminate automatically on the first to occur of the following dates:

> A. The date the Employee ceases to be eligible for Plan benefits for
> any reason . . . ."

The language of the Painters Benefits Plan clearly states that plaintiff was covered under

the only so long as she remained eligible. Her eligibility depended on her husband remaining

eligible. On the loss of his eligibility, the plaintiff automatically lost her coverage.

The plaintiffs and the Painters Plan argue that M.Mathisen continued to be covered under

the Painters Plan, since she did not expressly decline an election under COBRA. (Plaintiff's

Memorandum of Law In Support of Its Motion for Summary Judgment, pgs. 11-12 ; Painters Plan

Memorandum of Law In Support of Its Motion for Summary Judgment, pgs. 9-12 ). The Painters

Plan asserts that its payment of $86.24 as the secondary insurance portion of three bills for

medical services rendered between March 1 and May 31, 1995 provides evidence that M.Mathisen

continued to be covered under the Painters Plan. (Plaintiff's Memorandum of Law In Support of Its

Motion for Summary Judgment, pgs. 11-12 ; Painters Plan Memorandum of Law In Support of Its

Motion for Summary Judgment, pgs. 9-12 ).

Even examing these facts in a light most favorable to the non-movants, the legal

conclusions remain the same. First, a beneficiary who does not make a timely COBRA election

forfeits her right to COBRA coverage. Wilczynski v. Kemper National Insurance Companies, 178

F.3d 933, 940 (7th Cir. 1998); Mercado Garcia v. Ponce Federal Bank, 779 F.Supp. 620, aff. 979

F.2d 890 (D. P.R 1992). Since it is undisputed that the M.Mathisen never submitted the election form, she as a matter of law waived any right to COBRA through the Union.

Second, the language and intent of the Painters Plan could not be more clear about effect of ineligibility for the covered employee as well as for the spouse of the covered employee. Further, the payments do not provide evidence that the plaintiff continued to be a beneficiary of the Painters Plan. The Seventh Circuit has consistently held that mistaken payments by an insurance company due not operate to create (enforce, create) coverage by the mistaken insurance company. Coker v. Trans World Airlines, Inc., 165 F.3d 579, 585 (7th Cir.1999) (court found that defendent had not been estopped to deny coverage where defendant plan mistakenly continued to send benefits cards and pay medical benefits two years after plaintiff's medical benefits); Vershaw v. Northwestern Nat. Life Ins. Co., 979 F.2d 557, 560 (7th Cir. 1992) (court rejected plaintiff's argument that the payment of a $400.00 treadmill and two prescriptions totaling $6.00 dollars evidenced coverage).

Since the Painters Plan does not provide support for its argument with excerpts from its plan documents or deposition testimony, there is no genuine issue of material fact as to whether K.Mathisen lost his coverage under the Painters Plan, and consequently there is no genuine issue of material fact as to whether M.Mathisen simultaneously lost her eligibility under the Painters Plan..

## 2. Regaining Eligibility Under the Painters Plan On June 1, 1995

As a result of her becoming covered under the Painters Plan on June 1, 1995 plaintiff automatically lost her COBRA coverage with the Sundance Plan. The SPD mirrors §1162 (D)(1) by providing that COBRA coverage "will end if . . . The person becomes covered under another group plan." Both the Supreme Court and the Seventh Circuit have expressed a preference for giving effect to the plain meaning of Section 1162 (D)(1). Geissal, 524 U.S. 64; Lutheran Hospital,

51 F.3d 1308. In <u>Geissal</u>, the Supreme Court indicated that obtaining new coverage after the election automatically terminated COBRA coverage. <u>Geissal</u>, 524 U.S. 64. TheSPD provides that COBRA coverage "will end if . . . The person becomes covered under another group plan." Finally, the Painters Plan Summary Plan Description provides for automatic enrollment of participants' spouses and dependant children without any exclusions for preexisting conditions as follows:

"a.　　Benefits for your dependents start on the same day your benefits start."

On June 1, 1995, K.Mathisen received a letter from the Painters Plan stating that he had met the eligibility requirements and had regained his Painters Plan coverage as it had existed before his ineligibility. At that point, the plaintiff too reacquired her coverage under the Painters Plan as the spouse of a covered employee. The plaintiff agrees that she continued to be covered as a dependent under the Painters Plan. M.Mathisen's reacquisition of coverage under the Painters Plan after the date of her COBRA election effectively terminated M.Mathisen's COBRA continuing coverage pursuant to the Sundance Plan. On June 1, 1995 Painters Plan became the primary health care provider for M.Mathisen, as the spouse of K.Mathisen.

Since the Mathisen Children were born after M.Mathisen's continuing coverage under the COBRA plan pursuant to the Sundance Plan had been terminated and replaced by automatic coverage for dependants under the Painters Plan, the Painters Plan is liable past and future health care costs provided to the Mathisens after June 1, 1995.

### Liability and Damages

This court has determined that Painters Plan been liable for the health care of M.Mathisen and the Mathisen Children since June 1, 1995. The only genuine issue of material fact that remains is the amount of that liability and the restitution owed the Sundance Parties. There is

19

no evidence as to what amount of the total care received by the Mathisens' would have been covered by the Painters Plan. The record contains general numbers about the amount paid by the Sundance Parties on behalf of M.Mathisen and the Mathisen Children, but there is no delineation between Sundance Homes, the Sundance Plan, and Great West.

Consequently, a hearing will be conducted in order to ascertain the amount of liability to each party.

### Conclusion

For the foregoing reasons, plaintiff M.Mathisen and third-party defendant Painters Plan's motion for summary judgment against is denied. The parties must submit their motions as to the issue of liability and reasonable attorney's fees within 45 days.

**Enter:**

David H. Coar

**United States District Judge**

**Dated:** SEP 27 2000